**KIRKLAND & ELLIS LLP**
Lauren Schweitzer (State Bar No. 301654)
lauren.schweitzer@kirkland.com
333 South Hope Street, 29th Fl.
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re:*<br><br>SUBPOENA ON THIRD PARTIES ANTHONY INSOGNA AND DAVID GAY | Case No.: 3:19-CV-01589-LAB-AHG<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THIRD PARTIES ANTHONY INSOGNA AND DAVID GAY'S MOTION TO QUASH SUBPOENAS** |
| CELGENE CORPORATION,<br><br>        Plaintiff,<br><br>    vs.    vs.<br><br>HETERO LABS LIMITED, *et al.*,<br><br>        Defendants. | *Underlying action pending in the District Court of New Jersey*:<br><br>Case No. 17-cv-3387-ES-MAH |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND...................................................................... 2

III.   LEGAL STANDARD ................................................................................ 3

IV.   ARGUMENT............................................................................................. 4

     A.     Movants are in Possession of Unique, Discoverable Information Relevant to Defendants' Claims and Defenses. ................................... 4

         1.     *Mr. Insogna and Dr. Gay Prosecuted the Patents-in-Suit, and Possess Unique Knowledge Relevant to Celgene's Infringement Theories and Defendants' Invalidity Defenses.* ........... 4

         2.     *Mr. Insogna Prosecuted Celgene Prior Art Patents that Defendants Primarily Rely Upon for the Formulation Patents.* ........ 8

         3.     *Mr. Insogna Also Prosecuted Other Prior Art Patents that Defendants Primarily Rely Upon for the MOT Patents.* ................. 10

     B.     Movants' Speculative and Wholesale Claim of Privilege Does Not Warrant Quashing the Subpoenas ................................................... 11

     C.     An Inequitable Conduct Defense Is Not Required........................... 14

     D.     Defendants do not seek expert testimony from Movants............................ 14

V.     CONCLUSION........................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Labs. v. Pharmacia Corp.*,
   225 F. Supp. 2d 340 (S.D.N.Y. Aug. 2, 2002) ........................................ 14

*Amicus Commc'ns, L.P. v. Hewlett-Packard Co.*,
   No. 99-284 HHK/DAR, 1999 WL 33117227 (D. D.C. Dec. 3, 1999) ........................ 15

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
   282 F.R.D. 259 (N.D. Cal. 2012) .......................................... 4, 16

*Apple, Inc. v. Qualcomm Inc.*,
   No. 3:17-cv-00108-GPC-MDD, 2018 WL 3861893 (S.D. Cal. Aug. 14, 2018) ...................................................... 16

*Bayer Healthcare, LLC v. Zoetis Inc.*,
   12 C 00630, 2016 WL 4179087 (N.D. Ill. Aug. 8, 2016) ........................ 6

*Big Baboon Corp. v. Dell, Inc.*,
   No. CV0901198SVWSSX, 2010 WL 11459352 (C.D. Cal. July 22, 2010) ........................................................ 13

*Biovail Corp. Intern. v. Andrx Pharm., Inc.*,
   158 F. Supp. 2d 1318 (S.D. Fla. 2000), *aff'd*, 239 F.3d 1297 (Fed. Cir. 2001) ......................................................... 6

*Celgene Corporation v. Hetero Labs Limited et al.*,
   Civ. No. 2-17-cv-03387-ES-MAH (D.N.J.) ........................................ 2

*Environ Prods., Inc. v. Total Containment, Inc.*,
   No. 95-4467, 1996 WL 494132 (E.D. Pa. Aug. 22, 1996) ........................ 14

*Genal Strap, Inc. v. Dar*,
   No. CV2004-1691(SJ)(MDG), 2006 WL 525794 (E.D.N.Y. Mar. 3, 2006) ........................................................ 6, 12, 13

*Genentech, Inc. v. Amgen, Inc.*,
   289 F.3d 761 (Fed. Cir. 2002) .............................................. 3

*LG Philips LCD Co. v. Tatung Co.*,
   No. 04-343-JJF, 2007 WL 2908177 (D. Del. Oct. 1, 2007) ........................ 9

*Luck v. Univ. of San Diego*,
   No. 13CV3088 JLS (BGS), 2014 WL 7111950 (S.D. Cal. Oct. 3, 2014) ................. 4

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*,
   257 F.R.D. 456 (N.D. Ill. June 6, 2008) ...................................... 13

*Oak Indus. V. Zenith Elecs. Corp.*,
   687 F. Supp. 369 (N.D. Ill. 1988) .......................................... 6, 15

*Robocast, Inc. v. Microsoft Corp.*,
  No. 1:13-mc-00104-RGA, 2013 WL 1498666 (D. Del. Apr. 12, 2013) ...................... 14

*Simmons v. Morgan Stanley Smith Barney*,
  LLC, No. 11CV2889-WQH (MDD), 2013 WL 310330 (S.D. Cal. Jan.
  25, 2013) ......................................................................................................... 4

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
  276 F.R.D. 376 (D.D.C. 2011) ...................................................... 13, 15, 16

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
  813 F.2d 1207 (Fed. Cir. 1987) ............................................................... 3

*V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*,
  No. 06-2304 (FLW), 2008 WL 3887621 (D.N.J. Aug. 20, 2008)................. 3, 6, 14, 15

*Vita-Mix Corp. v. Basic Holdings, Inc.*,
  No. 1:06 CV 2622, 2007 WL 2344750 (N.D. Ohio Aug. 15, 2007) ............................ 3

*WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*,
  No. 07-CV-3885, 2009 WL 89935 (N.D. Ill. Jan. 14, 2009) ...................................... 13

**Rules**

Fed. R. Civ. P. 26 ...................................................................................... 13

Fed. R. Civ. P. 30(a)(1) ................................................................................ 3

Fed. R. Civ. P. 30(b)(1) ................................................................................ 3

Fed. R. Civ. P. 30(b)(6) ................................................................................ 7

Fed. R. Civ. P. 45 ...................................................................................... 14

Fed. R. Civ. P. 45(a)(1)(B) ............................................................................ 4

Fed. R. Civ. P. 45(d)(3)(A)(iii) ...................................................................... 12

Fed. R. Civ. P. 45(d)(3)(B) ........................................................................... 16

Fed. R. Civ. P. 45(d)(3)(B)(ii) ....................................................................... 15

iii

## I.      INTRODUCTION

Defendants[1] served deposition subpoenas on prosecution counsel of the patents-in-suit in a patent infringement action in the District of New Jersey, Anthony M. Insogna and David A. Gay, Ph.D. (together, the "Movants"). For the reasons outlined below, the Court should respectfully deny the Movants' motion.

*First*, the testimony Defendants seek from the Movants is relevant. Mr. Insogna and Dr. Gay prosecuted the patents-in-suit and are uniquely placed to testify as to the submissions made to the Patent Office during prosecution, including the facts underlying the arguments each made that are relevant to Celgene's infringement theory under the doctrine of equivalents. Additionally, Mr. Insogna is uniquely in possession of relevant knowledge as to the underlying facts relating to Celgene's validity arguments that the patents-in-suit exhibit unexpected results. Mr. Insogna also prosecuted one of Defendants' key prior art patent applications (one of which is also Celgene's) that Celgene now attempts to discredit in the D.N.J. Litigation.

*Second*, although Defendants are not required to exhaust every avenue of discovery before serving a subpoena on a non-party, Defendants did so here after first attempting to obtain such discovery from Celgene. In response to Defendants' discovery requests, outlined in further detail below, Celgene responded that it lacks possession, custody, or control over responsive information, leaving Defendants with no other option but to serve these subpoenas. If Defendants are denied the opportunity to obtain relevant testimony from the Movants on these issues, Defendants' defenses would be prejudiced.

*Third,* patent prosecutors are regularly and commonly deposed in patent litigations —a fact that cuts against Movants' arguments to the contrary that Movants possess only privileged information and therefore could not possibly provide factual testimony. Moreover, Movants' wholesale assertion of privilege because Movants "became familiar"

---

[1] Defendants Apotex Inc., Apotex Corp., Mylan Pharmaceuticals Inc., Mylan Inc., Mylan N.V., and Teva Pharmaceuticals USA, Inc. (collectively, "Defendants") submit this opposition.

with the underlying issues during prosecution is inappropriate. The correct course of action is to permit the depositions to proceed subject to the privilege objections of counsel at the deposition.

*Fourth*, Mr. Insogna's and Dr. Gay's factual (not opinion-based) testimony is directly relevant to Defendants' disputed issues relating to invalidity and infringement, including on the meaning of certain arguments and amendments made during prosecution and the facts underlying those arguments and amendments. Celgene itself agrees that the scope of prosecution history estoppel requires further factual discovery. Thus, Movants' argument that their percipient, relevant, factual witness testimony is somehow unretained expert testimony is incorrect.

## II.    FACTUAL BACKGROUND

Celgene instituted the underlying patent infringement action in the District of New Jersey (*Celgene Corporation v. Hetero Labs Limited et al.*, Civ. No. 2-17-cv-03387-ES-MAH (D.N.J.) "the D.N.J. Litigation"), which relates to Defendants' Abbreviated New Drug Applications ("ANDAs") seeking FDA approval to market pomalidomide capsules. There are five patents-in-suit, comprising two families of related patents: U.S. Patent Nos. 8,198,262, 8,673,939, and 8,735,428, which are directed to methods of treating multiple myeloma with pomalidomide ("MOT Patents"), and U.S. Patent Nos. 8,828,427 ("the '427 patent") and 9,993,467 ("the '467 patent"), which are directed to capsule formulations of pomalidomide ("formulation patents"). Defendants contest infringement and validity of the patents-in-suit. As described in further detail below, the Movants Mr. Insogna and Dr. Gay were the prosecuting attorneys for the patents-in-suit, and Mr. Insogna was also the prosecuting attorney for one of Defendants' primary prior art references.

Fact discovery in the D.N.J. Litigation is ongoing. Defendants have recently deposed one co-inventor of the Formulation Patents, Mr. Anthony Tutino. Ex. 1 (Tutino Dep. Tr.).[2]

---

[2] All exhibit numbers refer to the exhibits attached to the Declaration of Joseph Sanderson, filed concurrently with this brief.

On July 31, 2019, Defendants served a Notice of Deposition under Fed. R. Civ. P. 30(b)(1) naming Mr. Insogna and Dr. Gay. Ex. 2 (7/31/2019 Defs.' 30(b)(1) Notice). On August 8, 2019, counsel for Celgene indicated that Mr. Insogna and Dr. Gay would not appear without Defendants serving a subpoena. Ex. 3 (8/8/2019 Email from F. Calvosa to. T. Hanson). On August 9, 2019, Defendants served the deposition subpoenas at issue here, naming Mr. Insogna and Dr. Gay. D.I. 1, Exhibits 1 and 2.

## III.   LEGAL STANDARD

The law of the regional circuit, not the Federal Circuit, applies to procedural issues that are not unique to patent law. *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 768 (Fed. Cir. 2002).

The Federal Circuit has held that a motion to quash a subpoena generally does not involve issues unique to patent law, and therefore regional law governs such motions. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed. Cir. 1987).

The Federal Rules of Civil Procedure do not prohibit the deposition of an attorney for a party. *See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person . . . ."). Depositions of an opposing party's patent prosecution counsel are routine in patent litigation. *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304 (FLW), 2008 WL 3887621, at *4 (D.N.J. Aug. 20, 2008) ("patent prosecutors are regularly deposed in subsequent patent litigation"); *Vita-Mix Corp. v. Basic Holdings, Inc.*, No. 1:06 CV 2622, 2007 WL 2344750, at *2 (N.D. Ohio Aug. 15, 2007) ("In fact, depositions of attorneys in patent infringement and invalidity suits are not unusual.").

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(B), a party may serve a subpoena upon a non-party, commanding the non-party to attend a deposition. Fed. R. Civ. P. 45(a)(1)(B). The party issuing the subpoena must demonstrate that the discovery sought is relevant." *Luck v. Univ. of San Diego*, No. 13CV3088 JLS (BGS), 2014 WL 7111950 at *2 (S.D. Cal. Oct. 3, 2014) (citation omitted). Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible

3

evidence," and need not be admissible at trial to be discoverable. *Id.* There is no requirement that the information sought directly relate to a particular issue in the case. "Rather, relevance encompasses any matter that 'bears on' or could reasonably lead to a matter that could bear on, any issue that *is or may be presented in the case*." *Simmons v. Morgan Stanley Smith Barney*, LLC, No. 11CV2889-WQH (MDD), 2013 WL 310330, at *1 (S.D. Cal. Jan. 25, 2013) (emphasis added). There is a strong presumption against denying a party discovery regarding facts that may be relevant to a litigated dispute. *Apple Inc. v. Samsung Elecs. Co. Ltd*., 282 F.R.D. 259, 263 (N.D. Cal. 2012).

## IV. ARGUMENT

### A. Movants are in Possession of Unique, Discoverable Information Relevant to Defendants' Claims and Defenses.

#### 1. Mr. Insogna and Dr. Gay Prosecuted the Patents-in-Suit, and Possess Unique Knowledge Relevant to Celgene's Infringement Theories and Defendants' Invalidity Defenses.

The parties' contentions and submissions to the Court in the D.N.J. Litigation confirm that the Movants possess unique, factual knowledge that is directly relevant to positions Celgene has taken, including on issues of infringement and validity of the formulation patents-in-suit (the '427 and '467 patents), which were prosecuted by the Movants.

Celgene concedes that, at least for the '427 patent, Defendants' ANDA products do not literally infringe the asserted claims. Ex. 4 (D.I. 171, D.N.J. Litigation) at 14 ("Celgene is not asserting literal infringement for the '427 patent."). Instead, Celgene relies on an infringement theory under the doctrine of equivalents for all asserted claims of the '427 patent, and for certain asserted claims of the '467 patent. *See* Ex. 19 (D.I. 176, D.N.J. Litigation) at 1-2. However, based on Celgene's arguments and claim amendments made during prosecution of the '427 and '467 patents in response to prior art rejections by the Examiner, Defendants contend that Celgene is estopped from asserting infringement under the doctrine of equivalents. Celgene denies that prosecution history estoppel limits the

4

scope of the claims and specifically that "any amendments and arguments made during prosecution were, at most, tangential to the accused equivalents." Ex. 4 (D.I. 171, D.N.J Litigation) at 9. Celgene "also disputes that the scope of any purported, surrendered subject matter is as broad as Defendants contend." *Id.* at 10.

Mr. Insogna was the prosecuting attorney for the '427 patent. Ex. 5 ('427 Patent File History) at CELPOM00001498 (Application Datasheet signed by A. Insogna); CELPOM00001692, CELPOM00001827 (Office Action Responses signed by Jones Day "for Anthony M. Insogna"); CELPOM00001847-1949 (Interview Summary listing Jones Day attorney); CELPOM00001859 (same, including the 2013 Tutino Declaration). Dr. Gay was the prosecuting attorney for the '467 patent. Ex. 6 ('467 Patent File History) at CELPOM12428175, CELPOM12428268, CELPOM12428290, CELPOM12428327, CELPOM12428359 (Office Action Responses signed by Jones Day for "David A. Gay"), CELPOM12428376 (same, including the 2018 Tutino Declaration); CELPOM12431232 (Post Allowance Communication signed by Jones Day for "David A. Gay").

Mr. Insogna and Dr. Gay therefore possess unique knowledge concerning the prosecution of the formulation patents-in-suit, including the meaning of the arguments and amendments made by the Movants during prosecution, and their factual underpinnings. Information about such patent prosecution actions, as well as the underlying facts, are discoverable and appropriately sought by deposing patent prosecution counsel. *Genal Strap, Inc. v. Dar*, No. CV2004-1691(SJ)(MDG), 2006 WL 525794, at *3 (E.D.N.Y. Mar. 3, 2006); *see also V. Mane Fils,* 2008 WL 3887621, at *4 ("patent prosecutors are regularly deposed in subsequent patent litigation"); *Oak Indus. V. Zenith Elecs. Corp.*, 687 F. Supp. 369, 374 (N.D. Ill. 1988) (compelling prosecution attorney testimony on why the attorney "had drafted parts of different documents as he had," and holding that the moving party "may inquire into the mental impressions and legal theories [the prosecution attorney] had formulated in connection with the patent application."). Courts have routinely found the testimony of prosecuting attorney to be relevant, including on issues of infringement and

claim interpretation. *See, e.g., Biovail Corp. Intern. v. Andrx Pharm., Inc.*, 158 F. Supp. 2d 1318, 1323 (S.D. Fla. 2000), *aff'd*, 239 F.3d 1297 (Fed. Cir. 2001) (finding no literal infringement or infringement under DOE; referring to the testimony of the "prosecuting attorney," who testified at deposition concerning statements to the PTO during prosecution of the patent-in-suit); *Bayer Healthcare, LLC v. Zoetis Inc.*, 12 C 00630, 2016 WL 4179087, at *10 (N.D. Ill. Aug. 8, 2016) (finding that testimony of "prosecuting attorney" was "relevant" to the meaning of claim terms).

Defendants also assert that the '427 and '467 patents are invalid as obvious over the prior art, including prior art formulations of pomalidomide. In response, Celgene asserts that the formulations claimed by the '427 and '467 patents "unexpectedly yielded a stable formulation." Ex. 7 ('467 Patent Validity Contentions) at 171; Ex. 8 ('427 Patent Validity Contentions) at 488. Celgene's purported basis for these alleged unexpected results is described in two declarations submitted during prosecution of the '427 and '467 patents by named inventor Mr. Anthony Tutino in 2013 ("2013 Tutino Declaration") and 2018 ("2018 Tutino Declaration"), which purport to set out Celgene's formulation development efforts. Ex. 7 ('467 Patent Validity Contentions) at 172 ("totality of the data, including both Tutino Declarations and the patent specification, establish that the novel formulations claimed in the '467 patent led to unexpectedly stable formulations."); Ex. 5 (2013 Tutino Declaration); Ex. 6 (2018 Tutino Declaration).

Defendants recently deposed Mr. Tutino,[3] ███████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[3] Celgene designated Mr. Tutino as its Rule 30(b)(6) for certain topics, including, for example, Topic 3 which related to the declarations filed during prosecution of the patents-in-suit. Ex. 9; Ex. 1 (Tutino Dep. Tr.) at 20:23–23:23.

Defendants sought a Rule 30(b)(6) witness to testify as to the preparation, filing, and prosecution of the patents-in-suit, including the 2013 and 2018 Tutino Declarations. In response, Celgene stated that each of these topics "seeks information not in Celgene's possession, custody, or control." Ex. 9 (Celgene's 30(b)(6) Objs. and Resps.) at 5-6 (Topics 3 and 4).

As a result, Mr. Insogna and Dr. Gay, as prosecution counsel for the '427 and '467 patents, including the attorneys submitting the 2013 and 2018 Tutino Declarations to the PTO, are uniquely placed to provide testimony as to the preparation of the declarations and their factual underpinnings, including the underlying stability data that Mr. Tutino could not confirm existed. The Movants are also uniquely in possession of knowledge as to the arguments made to the Patent Office in Celgene's responses to the Patent Office. Defendants' non-infringement and invalidity defenses will be severely prejudiced if they are unable to depose the Movants.

### 2. Mr. Insogna Prosecuted Celgene Prior Art Patents that Defendants Primarily Rely Upon for the Formulation Patents.

At the same time that Celgene's '427 patent was being prosecuted by Mr. Insogna, Celgene and Mr. Insogna were also prosecuting another patent application with claims to pomalidomide capsule formulations: U.S. Patent Publication 2007/0155791 ("the '791 publication"). Ex. 10 ('791 Publication) at 1 (face of '791 Publication listing Jones Day as "Agent"); Ex. 12 ('791 Publication File History) at 3 (application signed for Mr. Insogna). The '791 Publication, which is prior art to the '427 and '467 patents, includes Example 8, which discloses a capsule formulation of pomalidomide. Ex. 10 ('791 Publication). at 16. Defendants rely on the '791 publication as part of their obviousness defenses, specifically including Example 8 and the statements in the specification concerning the ability to formulate pomalidomide capsules according to "well known" principles of the art. Ex. 11 ('467 Invalidity Contentions) at 23-25.

Despite having allegedly reduced to practice the unexpectedly stable formulations claimed in the '427 patent by May 2009 (the alleged priority date), Celgene and Mr. Insogna were still pursuing far broader claims to pomalidomide formulations in the '791 Publication up until June 28, 2010. Ex. 12 ('791 Publication File History) at 56 (Claim 22: "The method of claim 1, 2, 3, or 4, wherein the compound or a pharmaceutically acceptable salt, solvate or stereoisomer thereof is administered orally in a dosage form of a tablet or a capsule."). In the D.N.J. Litigation, Celgene attempts to discredit its own '791 Publication, arguing that "the formulation described in the '791 publication was prophetic, and supported [Mr. Tutino's] statement that, 'even if actually made, [it] would not possess the advantageous stability profile possessed by the currently claimed dosage forms.'" Ex. 7 ('467 Patent Validity Contentions) at 172.

Defendants need to resolve these inconsistencies through fact discovery, including through the deposition of Mr. Insogna, to determine what support (if any) Celgene had to include Example 8 in the '791 Publication, and to make the statements in the specification of the '791 Publication concerning the ability of skilled artisans to formulate stable

8

pomalidomide formulations. Additionally, Defendants need to resolve the inconsistent statements made by Mr. Tutino in his 2013 Declaration concerning Example 8 of the '791 Publication. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ *see also LG Philips LCD Co. v. Tatung Co.*, No. 04-343-JJF, 2007 WL 2908177, at *1 (D. Del. Oct. 1, 2007) (granting accused infringer's motion to compel deposition of the attorney who prosecuted one of the patentee's non-asserted patents to address an apparent discrepancy between representations regarding a specific prior art reference made by the patentee in the course of the prosecution of the non-asserted patent and the patentee's litigation position on the patents-in-suit regarding that same prior art reference).

Again, Celgene has indicated that it lacks knowledge on these relevant issues. For example, Defendants served interrogatories on Celgene requesting that Celgene explain the basis for statements made by Celgene in the '791 publication that such dosage forms could be formulated with excipients "well known in the art" and "prepared by methods of pharmacy well known to those skilled in the art." Ex. 13 (Celgene's Objs. & Resps. to Mylan 1st Rogs.) at 2, 6 (ROGs 1 and 4). Celgene objected that each interrogatory "seeks information that is not within Celgene's possession, custody, or control." *Id*. Defendants also served interrogatories on Celgene's basis to pursue two claims reciting pomalidomide capsule formulations in the '791 Publication up until June 28, 2010 (years after the development work by Mr. Tutino was allegedly completed). *Id*. at 3-5 (ROGs 2 and 3). Celgene again objected that these interrogatories "seek[] information that is not within Celgene's possession, custody, or control." *Id*. Finally, Defendants also served an interrogatory requesting that Celgene identify the basis for including the capsule formulation of Example 8, upon which the Examiner relied upon in rejecting the claims,

9

and which Defendants rely upon for their prior art defenses. *Id*. at 7-8 (ROG 5). Celgene again objected that the interrogatory "seeks information that is not within Celgene's possession, custody, or control." *Id*.[4]

Thus, Mr. Insogna is uniquely placed to provide relevant testimony on these issues, and Celgene's discovery responses to Defendants indicate that Celgene itself lacks this relevant information.

### 3.   Mr. Insogna Also Prosecuted Other Prior Art Patents that Defendants Primarily Rely Upon for the MOT Patents.

In relation to the other patent family at issue in the D.N.J. Litigation–the method of treatment (MOT) patents–Defendants rely on the prior art development work of third-party EntreMed. Ex. 14 (Defs.' Invalidity Contentions) at 179–180. Specifically, Defendants contends that "pomalidomide for treatment of blood related cancers was conceived of and reduced to practice by Robert D'Amato and/or Robert D'Amato with others at The Children's Medical Center Corporation, and not [named inventor] Jerome B. Zeldis." *Id*. Defendants rely on a prior art patent of Dr. D'Amato, U.S. Patent No. 5,712,291, which discloses methods of treating certain cancers with 3-aminothalidomide, also known as pomalidomide. *Id*. at 56-57. As a result of litigation between Celgene and EntreMed in the early 2000s, "Celgene licensed from EntreMed, Inc. the rights to lenalidomide and pomalidomide." Ex. 14 (Defs' Invalidity Contentions) at 180. Celgene does not deny this. Ex. 8 ('427 Validity Contentions) at 453. Despite Celgene obtaining a license to D'Amato's patents, Celgene claims that "none of the D'Amato patents are listed in the Orange Book as covering pomalidomide or the use of pomalidomide for treating multiple myeloma." D.I. 340 at 9.

Mr. Insogna was involved in the prosecution of the D'Amato patents once they were transferred to Celgene pursuant to the settlement. Mr. Insogna was also involved the

---

[4] Defendants met and conferred with Celgene regarding the interrogatories referred to in this paragraph on October 9, 2019. To date, Celgene continues to maintain all objections.

settlement agreement that was entered into between Celgene, Children's Medical Center, and EntreMed, Inc. Ex. 15 (Settlement Agreement). Pursuant to the settlement, Celgene took control over the prosecution of the D'Amato patent applications, and sought to expressly abandon them, even after one had received a notice of allowance from the patent office. Ex. 16 at 29 (July 11, 2003, Response in U.S. Patent App. No. 10/020,391, signed for "Anthony M. Insogna"). Mr. Insogna then submitted a Notice of Express Abandonment. *Id.* at 30 (Oct. 14, 2003, Notice of Express Abandonment). Defendants need to depose Mr. Insogna to obtain factual evidence supporting or contradicting the contentions that Celgene has put forward in the D.N.J. Litigation, including the disclosures and scope of the D'Amato prior art patent family, and the details and nature of the materials that were transferred to Celgene from EntreMed as part of the litigation settlement that he was named on.

Indeed, Mr. Insogna has already been deposed in the prior litigation between Celgene and EntreMed, confirming he uniquely possess relevant knowledge on these issues. Ex. 17 (D.I. 92 in 1:13-cv-11573) at 2 (referencing the "February 26, 2015 deposition of Anthony Insogna."). In fact, he was even scheduled to appear as a witness for Celgene at trial in that proceeding. Ex. 18 (D.I. 133, Joint Status Report in 1:13-cv-11573) at 2.

### B. Movants' Speculative and Wholesale Claim of Privilege Does Not Warrant Quashing the Subpoenas

Movants argue that Defendants' subpoenas to Mr. Insogna and Dr. Gay must be quashed because they seek disclosure of privileged information. Movants Br. 6-7. Movants are incorrect. Defendants' subpoenas do not seek improper disclosure of privileged information, and therefore should not (and must not) be quashed. Fed. R. Civ. P. 45(d)(3)(A)(iii). As Defendants explained *supra*, Mr. Insogna and Dr. Gay have personal knowledge of relevant non-privileged information regarding the patents-in-suit and Defendants' key prior art. This knowledge includes at least technical information underlying the declarations filed in support of patentability of the applications that

11

ultimately issued as the patents-in-suit. *See, e.g.*, *Genal Strap*, 2006 WL 525794, at *3 (finding that underlying "technical information" and communications between the client and patent prosecutor regarding same were not privileged). Moreover, Mr. Insogna and Dr. Gay, by virtue of their roles as patent prosecution counsel, performed work to prepare and prosecute the applications that ultimately issued as the patents-in-suit. Federal courts have found that such work is not created "in anticipation of litigation" and is not entitled to work product protection on that basis alone. *Id.* The Court should reject Movants' unsupported assertion that Mr. Insogna and Dr. Gay "have no relevant non-privileged information to offer." Movants Br. at 7.[5]

Indeed, Mr. Insogna's and Dr. Gay's factual representations and communications with the Patent Office are not privileged. *See, e.g.*, *Big Baboon Corp. v. Dell, Inc.*, No. CV0901198SVWSSX, 2010 WL 11459352, at *8 (C.D. Cal. July 22, 2010) (granting motion to compel third party testimony of patent attorneys, and permitting questions that pertain to relevant factual information); *see also WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL 89935, at *3 (N.D. Ill. Jan. 14, 2009) (explaining that facts asserted in declaration submitted to the Patent Office and communications with same "are not privileged and should be disclosed"); *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. June 6, 2008) (noting that statements between counsel and his client regarding the factual basis for representations in a declaration are not privileged and must be disclosed). Defendants in the D.N.J. litigation are entitled to ask Mr. Insogna and Dr. Gay about the factual information underlying their representations to the Patent Office. Defendants should be allowed to probe Mr. Insogna and Dr. Gay about

---

[5] Movants further argue, incorrectly, that "Defendants cannot evade the privilege by vaguely alleging that the witnesses **might** have non-privileged information, particularly where, as here, the third party witnesses have a clear privilege precluding their testimony." Movants' Br. at 6-7 (citing *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 384-85 (D.D.C. 2011) (emphasis in original). Movants are incorrect, and *Sterne Kessler* is inapposite here. Defendants have never vaguely alleged that Mr. Insogna and Dr. Gay **might** have discoverable information; indeed, unlike Kodak's "fishing expedition" described in *Sterne Kessler*, Defendants seek relevant, non-privileged information as outlined above, and have explained the information Defendants seek and its relevance to Defendants' defenses. 276 F.R.D. at 384-85. Moreover, Movants fail to cite **any** authority holding that a third party witness is categorically precluded from testifying by virtue of his role as prosecution counsel.

the relevant, non-privileged facts underlying these statements, as well as resolve any ambiguities regarding the meaning and interpretation of those statements.

Movants' wholesale privilege objections appear to be based solely and entirely on Defendants' Rule 26 initial disclosures. *See* Movants Br. at 6-7. However, Movants merely cite Defendants' Rule 26 initial disclosures *generally*. *Id.* at 6 (citing Exs. 6-11 thereto). Movants do not even attempt to show that the information sought from Mr. Insogna and Dr. Gay is privileged beyond the general argument that Movants "became familiar" with the patents during their work for Celgene. *Id.* at 6-7. Movants do not cite with any degree of particularity the information that Movants fear would be improperly revealed at deposition and that should be withheld as privileged. Indeed, the fact that patent prosecutors are commonly deposed in patent litigations is in direct contrast to Movants' arguments to the contrary. *See, e.g.*, *V. Mane Fils*, 2008 WL 3887621, at *4 ("[A] blanket prohibition on a deposition is inappropriate, *especially considering that patent prosecutors are regularly deposed in subsequent patent litigation*.") (emphasis added). This Court cannot rule with any specificity on issues of attorney-client and/or work product privilege based on Movants' bare-bones assertion that Mr. Isogna and Dr. Gay "became familiar" with the work underlying the patents-in-suit. Movants' blanket assertion of privilege simply does not meet the burden of Rule 45. *Robocast, Inc. v. Microsoft Corp.*, No. 1:13-mc-00104-RGA, 2013 WL 1498666, at *2 (D. Del. Apr. 12, 2013).

The Court should therefore reject Movants' wholesale privilege objection and allow the depositions to be taken subject to Movants' assertions of privilege if and when necessary. *V. Mane Fils*, 2008 WL 3887621, at *4. As other courts have recognized, "[t]he more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary...." *Id.* Movants cannot seriously suggest (and the Court cannot foresee based on Movants' proffered evidence) that each and every question Defendants would seek to ask Mr. Insogna and Dr. Gay will elicit privileged information. *Alcon Labs. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. Aug. 2, 2002) ("[T]he Court cannot rule in a vacuum, prior to the deposition,

13

that every question to be asked will seek to elicit privileged information."). Should Defendants' questioning stray into areas covered by the work product and/or attorney-client privilege, Movants would be free to assert privilege and, in the case of an impasse, seek the Court's assistance in resolving potential disputes. *Environ Prods., Inc. v. Total Containment, Inc.*, No. 95-4467, 1996 WL 494132, at *5 (E.D. Pa. Aug. 22, 1996). This Court should therefore instruct Movants to address any potential privilege issues ***at the deposition***. *V. Mane Fils*, 2008 WL 3887621, at *4.

### C.   An Inequitable Conduct Defense Is Not Required.

Movants appear to suggest that inequitable conduct in the procurement of a patent is a prerequisite to the discoverability of testimony from an attorney who prosecuted the patent—this is incorrect. *See, e.g., Oak*, 687 F. Supp. at 374 (compelling testimony from prosecution attorney as to why certain prosecution documents were drafted as they were, with no inequitable conduct issues involved); *see also, Amicus Commc'ns, L.P. v. Hewlett-Packard Co.*, No. 99-284 HHK/DAR, 1999 WL 33117227, at *1 (D. D.C. Dec. 3, 1999) (compelling testimony from a trademark prosecution attorney as to "the meaning of the trademark registration.")  There is no blanket rule here whereby depositions of prosecution attorneys are allowed only if inequitable conduct has been raised as a defense in the underlying litigation, and Movants have provided no authority supporting any suggestion otherwise.  As outlined above, there are numerous factual disputes between the parties to the D.N.J. Litigation as to what took place and why during prosecution of the MOT and formulation patents, and during prosecution of other Celgene patents that Defendants are relying on for prior art to the MOT and formulation patents—Movants have direct knowledge pertaining to those factual disputes, and Defendants should be able to secure testimony from Movants on these disputes.

### D.   Defendants do not seek expert testimony from Movants.

Movants also independently argue that the Court should exercise its discretion and quash the subpoenas under Rule 45(d)(3)(B)(ii) because the subpoenas allegedly "seek[] 'an unretained expert's opinion.'" Movants Br. at 9 (citation omitted). Movants are

14

incorrect. The Court should reject Movants' argument because Defendants are not seeking Mr. Insogna's or Dr. Gay's "personal views on issues relating to patent validity or claim construction," but rather on specific factual, non-privileged, and relevant information as outlined above. *See id.* (citing *Sterne Kessler,* 276 F.R.D. at 385). Thus, Movant's reliance on *Sterne Kessler* is inapposite. Mr. Insogna's and Dr. Gay's factual (not opinion-based) testimony is directly relevant to Defendants' disputed issues; for example, Celgene agrees that the scope of prosecution history estoppel "is potentially an issue of disputed ***fact that requires further factual*** and expert discovery." Ex. 19 (D.I. 176, D.N.J. Litigation) at 2, n. 3; *see also* Ex. 4 (D.I. 171, D.N.J. Litigation) at 10 (Celgene argued that "resolution of [the prosecution history estoppel] dispute will involve ***fact*** and expert discovery."). It is this kind of factual testimony that Defendants' seek from Mr. Insogna and Dr. Gay.

Furthermore, Movants' reliance on *Apple, Inc.* supports Defendants' position. Movants Br. at 9-10 (citing *Apple, Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2018 WL 3861893 at *6 (S.D. Cal. Aug. 14, 2018)). As the court explained in *Apple, Inc.*, "[p]ercipient witness testimony . . . is based on the first hand [sic] experience of the witness, i.e., the observations and conduct of the witness." 2018 WL 3861893 at *5 (noting that a witness' testimony about his actions and decisions in a prior case, including his rationale behind those decisions, constituted percipient testimony). Defendants' subpoenas seek precisely this kind of factual percipient testimony, not testimony relating to "claim construction issues pertaining to the patents-in-suit" or "validity" as Movants suggest. Movants Br. at 9-10. Defendants' depositions of Mr. Insogna and Dr. Gay should be permitted, and counsel would be free to object to "[a]ny attempts by Defendants to question Mr. Insogna or Dr. Gay" about perceived "privileged information . . . or unretained expert testimony." *Id.* Thus, for at least those reasons, the Court should not exercise its discretionary authority under Rule 45(d)(3)(B) to quash the subpoenas, and instead should reject Movants' argument and permit the depositions to occur subject to the privilege objections of counsel.

## V.    CONCLUSION

Movants' unjustified request to block the depositions of Celgene's patent prosecutors in their entirety would preclude Defendants from obtaining relevant, non-privileged testimony critical to Defendants' defenses in the D.N.J. Litigation. Such a result is contrary to established law regarding the depositions of patent prosecutors in patent infringement litigation. Accordingly, Defendants respectfully request that the Court deny Movants' motion to quash in its entirety.

DATED:  October 15, 2019                  Respectfully submitted,

                                          /s/ *Lauren Schweitzer*
                                          Lauren Schweitzer (SBN 301654)
                                          Kirkland & Ellis LLP
                                          333 South Hope Street, 29th Fl.
                                          Los Angeles, CA 90071
                                          Telephone: (213) 680-8400
                                          Facsimile: (213) 680-8500
                                          lauren.schweitzer@kirkland.com

                                          *Attorney for Defendant Teva Pharmaceuticals USA, Inc.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Executed on October 15, 2019, in Los Angeles, California.

/s/ *Lauren Schweitzer*