# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CELGENE CORPORATION,**<br><br>　　　　　　**Plaintiff,**<br><br>　v.<br><br>**PAR PHARMACEUTICAL, INC., PAR PHARMACEUTICAL COMPANIES, INC., and TEVA PHARMACEUTICALS USA, INC.,**<br><br>　　　　　　**Defendants.** | Civil Action No. 17-3159 (ES)(MAH)<br><br>Hon. Esther Salas, U.S.D.J.<br>Hon. Michael A. Hammer, U.S.M.J.<br><br>**HIGHLY CONFIDENTIAL** |
| **CELGENE CORPORATION,**<br><br>　　　　　　**Plaintiff,**<br><br>　v.<br><br>**HETERO LABS LIMITED, HETERO LABS LIMITED UNIT-V, HETERO DRUGS LIMITED, HETERO USA, INC., AUROBINDO PHARMA LIMITED, AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA LLC, EUGIA PHARMA SPECIALTIES LIMITED, APOTEX INC., APOTEX CORP., MYLAN PHARMACEUTICALS, INC., MYLAN INC., MYLAN, N.V., and BRECKENRIDGE PHARMACEUTICAL, INC.,**<br><br>　　　　　　**Defendants.** | Civil Action No. 17-3387 (ES)(MAH)<br><br>Hon. Esther Salas, U.S.D.J.<br>Hon. Michael A. Hammer, U.S.M.J.<br><br>**HIGHLY CONFIDENTIAL** |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' INVALIDITY CONTENTIONS WITH RESPECT TO U.S. PATENT NOS. 8,198,262; 8,673,939; 8,735,428; AND 8,828,427**

abandoned, suppressed, or concealed it." IC at 178. Defendants' unsupported contentions lack merit.

### 1. The Subject Matter Claimed In The MoT Patents Was Not Previously Invented By Another

Defendants contend that "pomalidomide for treatment of blood related cancers was conceived of and reduced to practice by Robert D'Amato with others at The Children's Medical Center Corporation." *Id.* at 179. Defendants ignore that none of the alleged prior-art disclosures upon which they rely (*see id.* at 179-80) evidence the conception or reduction to practice of the inventions claimed in the MoT Patents.

For example, as explained in detail in Celgene's responses to Defendants' anticipation/obviousness contentions, none of the alleged prior-art references upon which Defendants rely disclose administering pomalidomide to treat MM, let alone cyclically administered pomalidomide. The alleged prior art also does not disclose, teach, or suggest the claimed inventions as a whole. Instead, the inventions are first described and claimed in the MoT Patents. Defendants' contention lacks merit.

Equally meritless is Defendants' reliance on certain filings in Civil Action No. 1:02-cv-02277 (D.D.C.) (the "*EntreMed* litigation"). Defendants contend, citing the *EntreMed* litigation, that "the subject matter claimed in the Zeldis Patents was previously invented in this country by another inventor who had not abandoned, suppressed, or concealed it." IC at 178. There is no evidence to support Defendants' contention, nor is Defendants' contention correct. The complaint filed in the *EntreMed* litigation sought to enjoin the issuance of U.S. Patent Application Nos. 09/899,344 and 10/020,391. Neither of these patent applications disclosed a method of treating MM by administering pomalidomide, let alone according to any of the methods specifically claimed in the MoT Patents. Instead, EntreMed's patent applications

sought to improperly cover the subject matter of the '471 patent, which as explained above, would not have disclosed, taught, or suggested the MoT Asserted Claims. Defendants' contention is baseless.

Defendants further contend that "Celgene licensed from EntreMed, Inc. the rights to lenalidomide and pomalidomide." IC at 180. This, like Defendants' other contentions, has no bearing on the inventorship of the MoT Patents. The claims of the MoT Patents cover specific methods of treating MM using pomalidomide with or without a second active agent (and, specifically, dexamethasone). Defendants provide no evidence indicating that the methods of treatment claimed in the MoT Patents were "previously invented in this country by another inventor who had not abandoned, suppressed, or concealed [them]." 35 U.S.C. 102(g). That is because no such evidence exists. Defendants' contentions lack merit.

Finally, Defendants' bald conclusion that "Celgene has no standing to assert the Zeldis Patents since the true inventors of the claimed subject matter are not listed on the Zeldis Patent and did not assign their invention to Celgene" is baseless and lacks merit. IC at 180. Contrary to Defendants' contention, Celgene has standing.

### 2. Dr. Zeldis Invented the Subject Matter Claimed in the MoT Patents

Defendants contend that "the authors of Richardson 2013 conceived of the claimed subject matter before Dr. Zeldis and communicated it to Dr. Zeldis; that communicated information was used to draft and prosecute the claims of the Zeldis Patents." IC at 179. Defendants are incorrect, and their contention makes no sense at least because the claimed methods were described and supported by the MoT Patents years before the study described in Richardson 2013 began.

because of the different densities of powdered drug materials.  Remingtons' disclosures regarding the capacity of hard capsules only gives a broad range of approximate capacities, subject to variation, for the entire size range of hard capsules.  Defendants also ignore that Remingtons discusses many types of oral solid dosage forms, including tablets, and notes that "care must be taken in the selection and evaluation of additives and preparation methods to ensure that the physiological availability and therapeutic efficacy of the active ingredient will not be diminished," without giving any suggestion of which dosage form would be preferred for any given active ingredient.  Remingtons at 1633.  Thus, a POSA would not look to Remingtons' disclosures when trying to develop a formulation of pomalidomide as claimed by the '427 patent.

In sum, Remingtons does not provide any teaching, suggestion, or motivation to modify its disclosures, let alone to combine them with the other alleged prior art relied upon by Defendants.  Also, Remingtons does not provide evidence that the claimed inventions of the '427 patent were at all predictable, let alone with a reasonable expectation of successfully arriving at the claimed inventions.  Defendants' reliance on Remingtons is based on hindsight.

### (b)     The '791 publication

Defendants rely on the '791 publication for its alleged teaching of: "oral dosage forms of pharmaceutical active ingredients, such as pomalidomide for the treatment of lupus"; "that the pharmaceutical compositions may be oral dosage forms, including oral capsules"; "that lactose-free oral dosage forms comprise 'excipients that are well known in the art' including fillers, such as pre-gelatinized starch"; that [a]dditional fillers include mannitol"; "that oral dosage forms may contain various lubricants, including magnesium stearate and silica gel"; "a pomalidomide dosage range of 0.5 mg to 2 mg per day"; and "that the daily dose of pomalidomide may be 0.1, 1, 2, 5, 10 or 25 mg per day."  IC at 182.  Defendants admit that the "'791 publication does not teach sodium stearyl fumarate in the amount recited in the claims."  IC at 182.

arriving at the claimed inventions.  Defendants' reliance on the '791 publication is based on hindsight.

### (c)  The '733 patent

Defendants rely on the '733 patent for its alleged teaching "that suitable lubricants for oral dosage forms include magnesium stearate and sodium stearyl fumarate," and its alleged suggestion "that the two lubricants may be used similarly in oral dosage forms, and that these excipients can be interchangeable."  IC at 183.  Defendants ignore that the '733 patent does not disclose formulations containing pomalidomide at all, much less the claimed formulations of the '427 patent.  For this reason alone, a POSA would not consider the disclosures of the '733 patent relevant to the invention of the '427 patent.  Further, the '733 patent's disclosure of a non-exhaustive list of allegedly suitable lubricants includes stearic acid, PEG (3,000-10,000), glyceryl behenate, "and the like," and includes combinations of any two or more thereof.  Thus, a POSA would not look to the '733 patent's disclosures when trying to develop a formulation as claimed by the '427 patent.  In fact, the laundry list of possible lubricants disclosed by the '733 patent teaches away from the formulations claimed by the '427 patent.  And Defendants do not explain why a POSA would have allegedly been seeking to develop a formulation of pomalidomide at the time of the claimed inventions in the first place.

Defendants additionally argue that the '733 patent "discloses capsule formulations comprising 0.25% (w/w) lubricant."  IC at 184.  Defendants ignore that Table 9 of Example 6 of the '733 patent provides examples of 16 different non-pomalidomide formulations, only half of which comprise 0.25% (w/w) lubricant.  Further, that lubricant disclosed is magnesium stearate.  Defendants provide no reason why a POSA would have been motivated to substitute sodium stearyl fumarate for the magnesium stearate disclosed in the '733 patent.  Indeed, just because a POSA *could* do something does not mean that the POSA *would have been motivated* to do so.  A

### (d) Secondary considerations support the validity of the '427 patent

For the reasons set forth above, Defendants have failed to establish a *prima facie* case of obviousness of the asserted claims of the '427 patent. Accordingly, Celgene need not present any evidence of secondary considerations.

At a minimum, however, the unexpected stability of the formulation claimed by the '427 patent, along with Defendants' copying of the formulations claimed by the '427 patent, would rebut any *prima facie* case of obviousness, and support the validity of the asserted claims of the '427 patent.



During development of the formulations embodied by the claims of the '427 Patent, stability tests were performed on numerous formulations using a variety of excipients. *See, e.g.*, 6-14-2013 Tutino Declaration at ¶ 7. It was unexpectedly found that compatibility issues existed in all of the tested formulations, *except* the formulation containing both mannitol and starch in the ratio claimed by the '427 Patent. *Id.* at ¶ 10. A POSA would not have expected the unique stability of the claimed formulations. *Id.*

The totality of the data, including the Tutino Declaration and the patent specification, establish that the ratios of mannitol and starch claimed in the '427 Patent lead to unexpectedly stable formulations. Nothing in the prior art would have led a POSA to expect any of these results. Indeed, if anything, a POSA would have expected that combining these excipients would not have led to the beneficial stability exhibited by the dosage forms of the Asserted Claims of the '427 Patent.

Citing the file history of the '427 Patent, Defendants contend that "Celgene relied on conjecture to suggest that the formulation disclosed in the '791 publication would not be stable, but did not test the formulation." IC at 187. However, the inventor of the '427 patent, Anthony Tutino, noted that the formulation described in the '791 publication was prophetic, and supported his opinion that "even if actually made, [it] would not possess the advantageous stability profile possessed by the currently claimed dosage forms" by showing evidence that a formulation similar to that disclosed in the '791 publication similarly did not exhibit an advantageous stability profile. *See* Tutino Dec. at ¶¶ 10-11.

Defendants also contend that "Celgene has not shown evidence of any unexpected results tied to the claimed combination of excipients present in the claimed amounts," because "[t]here is nothing in [D]r. Tutino's declaration to suggest that the steps taken to optimize the formulation were anything less than routine, or that he did not expect to reach a stable formulation." IC at 186-7. Defendants add that a POSA "would be able to vary the amounts of each of the claimed excipients, which were well-known, within known ranges to optimize the properties of the formulation and arrive at a stable formulation," and posit that "a stable formulation must have been created previously as used in Schey III, which administered capsules containing pomalidomide to multiple myeloma patients in the range of 1 to 10 mg per day." Defendants'

contentions lack merit.  As an initial matter, as explained above, a POSA without indication of which parameters are desirable, and without direction as to which of the many possible choices is likely to be successful, would not arrive at the formulations claimed in the Asserted Claims of the '427 patent, much less with a reasonable expectation of success.  Further, as explained above, Schey III neither discloses any formulations nor gives any indication what formulations or even dosage forms were administered.

Copying is evidenced by the fact that each Defendant attempted to create a formulation that would not infringe the claims of the '427 patent, but failed to do so.  *See generally* Celgene's Infringement Contentions.

### C. The Asserted Claims of the '427 Patent Are Not Invalid Under 35 U.S.C. § 112

As an initial matter, and as noted above, Defendants do not identify who their "person of ordinary skill in the art" or "POSA" allegedly would have been, despite making numerous contentions regarding what a POSA would have known or not known.  Defendants' contentions are baseless for this reason alone.

#### 1. The Asserted Claims of the '427 Patent Are Not Invalid for Indefiniteness Under 35 U.S.C. §112

Defendants contend that claims 3-10 of the '427 patent are invalid for indefiniteness because of the following two claim elements:

- "An oral dosage form in the form of a capsule which weighs [x] mg" and "at an amount that brings the total weight of the composition to [x] mg" (claims 3–10); and

- "at an amount that provides [x] mg of 100% pure pomalidomide" (claims 3–10).

Defendants are mistaken.  In short, Defendants have not identified any issue that would prevent a POSA from understanding the scope of the subject matter of claims 3-10 when read in conjunction with the rest of the specification and prosecution history.  Accordingly, Defendants