UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re:*<br><br>SUBPOENA ON THIRD PARTIES ANTHONY INSOGNA AND DAVID GAY | Case No.:  3:19-cv-1589-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING THIRD PARTIES ANTHONY INSOGNA AND DAVID GAY'S MOTION TO QUASH SUBPOENAS;**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO FILE DOCUMENTS UNDER SEAL; and**<br><br>**(3) GRANTING THIRD PARTIES' MOTION TO FILE DOCUMENTS UNDER SEAL.**<br><br>**[ECF Nos. 1, 6, 14 ]** |
| CELGENE CORPORATION,<br><br>                        Plaintiff,<br><br>v.<br><br>HETERO LABS LIMITED, et al.,<br><br>                        Defendants. | *Underlying action pending in the District Court of New Jersey:*<br><br>*Case No. 17-cv-3387-ES-MAH* |

# 1. MOTION TO QUASH SUBPOENAS (ECF No. 1)

Before the Court is Third Parties Anthony Insogna and David Gay's (collectively, "Third Parties") Motion to Quash Subpoenas. ECF No. 1. The Third Parties ask the Court to quash deposition subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(3) served on them by various defendants[1] in a case currently pending in the District Court of New Jersey. Defendants oppose the motion. ECF No. 9. The Court held a motion hearing on December 20, 2019. ECF No. 18. After consideration of the papers submitted and the parties' oral arguments, for the reasons set forth below, the Court **GRANTS** the motion.

## I. BACKGROUND

In a case currently pending in the District Court of New Jersey,[2] Plaintiff Celgene Corporation ("Plaintiff") filed actions against Defendants, alleging patent infringement arising from Defendants seeking FDA approval to market generic versions of Plaintiff's drug product, Pomalyst. ECF No. 1-2 at 2. There are five patents-in-suit, comprising two families of related patents: (1) U.S. Patent Nos. 8,198,262, 8,673,939, and 8,735,428, which are methods of treating multiple myeloma with pomalidomide; and (2) U.S. Patent Nos. 8,828,427 and 9,993,467, which are directed to capsule formulations of pomalidomide. ECF No. 7 at 6. Defendants contest infringement and validity of the patents-in-suit. *Id*. For example, based on Plaintiff's arguments and claim amendments made during prosecution of the '427 and '467 patents in response to prior art rejections by the Examiner, Defendants contend that Plaintiff is estopped from asserting infringement under the doctrine of equivalents. *Id*. at 8. Defendants also argue that the '427 and '467 patents are invalid as obvious over the prior art. *Id*. at 10.

---

[1] The defendants who served the subpoenas were Apotex Inc., Apotex Corp., Mylan Pharmaceuticals, Inc., Mylan Inc., Mylan N.V., and Teva Pharmaceuticals USA Inc. (collectively, "Defendants"). ECF No. 1-3 at 4, 13.

[2] *Celgene Corp. v. Hetero Labs., et al.*, No. 17-3387 (ES)(MAH) (D. N.J.), hereinafter referred to as the "underlying case."

In the underlying case, Defendants noticed depositions of two attorneys who were involved in the prosecution of the patents-in-suit subject to litigation, Third Parties, who have presently moved the Court to quash the deposition subpoenas. *See* ECF No. 1-3 at 4, 9, 13, 18. Dr. Gay's deposition was noticed for August 23, 2019; Mr. Insogna's deposition was noticed for August 26, 2019. *Id*.

Five years ago, Mr. Insogna was involved in the early prosecution of the application that ultimately issued as asserted U.S. Patent Nos. 8,198,262 and 8,828,427 for Plaintiff. ECF No. 1-2 at 5, 7. He was also the prosecuting attorney for one of Defendants' primary prior art references. ECF No. 7 at 6. He currently serves as litigation counsel for Plaintiff in the underlying case. ECF No. 1-2 at 5. Dr. Gay served as a prosecuting attorney for Plaintiff during the prosecution of the application that ultimately issued as asserted U.S. Patent No. 9,993,467 for Plaintiff. *Id*. at 5, 7. He continues to represent Plaintiff in patent prosecution matters. *Id*. at 5.

Third Parties contend that their depositions should be quashed because Defendants seek testimony that is protected by attorney-client privilege and the work product doctrine. ECF No. 1-2 at 7. Third Parties also argue that their depositions should be quashed because their testimony is not relevant to any claim or defense, and thus imposes an undue burden. *Id*. at 8. Additionally, Third Parties contend that their deposition testimony would constitute unpermitted, unretained expert opinion. *Id*. at 10.

Defendants contend that depositions of Third Parties are necessary to glean information about the submissions made to the Patent Office during prosecution, including the facts underlying the arguments each made that are relevant to Plaintiff's infringement theory under the doctrine of equivalents. ECF No. 7 at 5. Defendants seek Third Parties' testimony "on the meaning of certain arguments and amendments made during prosecution and the facts underlying those arguments and amendments." *Id*. at 6. They also seek testimony regarding the preparation of 2013 and 2018 declarations created by Plaintiff's Rule 30(b)(6) witness, Mr. Tutino. *Id*. at 11. Additionally, Defendants contend that Mr. Insogna is uniquely in possession of knowledge relating to the underlying facts relating to

Plaintiff's validity arguments that the patents-in-suit exhibit unexpected results. *Id*. at 5, 10. Further, Defendants contend that Mr. Insogna prosecuted one of Defendants' prior art patent applications, with claims to pomalidomide capsule formulations (one of which is also Plaintiff's), that Plaintiff attempts to discredit in the underlying case. *Id*. at 5, 12.

## II. LEGAL STANDARD[3]

Pursuant to Federal Rule of Civil Procedure 45, "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv).

In determining whether a subpoena poses an undue burden, courts must weigh "the burden imposed on the party subject to the subpoena . . ., the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Malibu Media, LLC v. Doe*, No. 16cv444-GPC-BGS, 2016 WL 7098807, at *1 (S.D. Cal. Dec. 6, 2016) (quoting *Liberty Media Holdings v. Does 1–62*, No. 11cv575-MMA-NLS, 2012 WL 628309, at *2 (S.D. Cal. Feb. 24, 2012); *see Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (though "irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena").

Where discovery is requested from non-parties, more stringent restrictions should be enforced. The Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests. *See High Tech Med. Instr., Inc. v. New Image Ind.,*

---

[3] The Federal Circuit has held that a motion to quash a subpoena generally does not involve issues unique to patent law, and therefore regional law governs such motions. *Trustwal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed. Cir. 1987); *see Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of the regional circuits on non-patent issues"). The Court will therefore apply Ninth Circuit precedent in deciding the instant motion to quash.

*Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995); *see, e.g.*, *Century Sur. Co. v. Master Design Drywall, Inc.*, No. 09cv280-LAB-AJB, 2010 WL 2231890, at *1 (S.D. Cal. June 2, 2010) ("Underlying the protections of Rule 45 is the recognition that the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citations and quotations omitted); *Kim v. NuVasive, Inc.*, No. 11cv1370-DMS-NLS, 2011 WL 3844106, *2 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts"). Thus, the subpoena should be tailored to request only information reasonably necessary to address specific issues in the case. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Deposing opposing counsel raises additional concerns as its "increasing practice . . . [is] a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Permitting depositions of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* at 1327. The Eighth Circuit has set out a three-part test for determining when it is appropriate to depose opposing counsel that is followed by courts in the Ninth Circuit.[4] *Shelton*, 805 F.2d at 1327. Therefore, opposing counsel

---

[4] Although the Ninth Circuit has not issued a published decision addressing whether *Shelton* provides the proper framework for determining when an attorney deposition is proper, "courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the leading case on attorney depositions and follow the three-factor test laid out in the case." *Stevens v. CoreLogic, Inc.*, No. 14cv1158-BAS-JLB, 2015 WL 8492501, at *2 (S.D. Cal. Dec. 10. 2015); *Erhart v. Bofi Fed. Bank*, No. 15cv2287-BAS-NLS, 2017 WL 840648, at *3 (S.D. Cal. Mar. 2, 2017) (noting that "several other circuits and this district" have adopted the *Shelton* test); *see, e.g.*, *Walters v. Target Corp.*, No. 16cv1678-L-MDD, 2018 U.S. Dist. LEXIS 170409, at *2–3 (S.D. Cal. Oct. 2, 2018); *Textron Fin. Corp. v. Gallegos*, No. 15cv1678-LAB-DHB, 2016 WL 4169128, at *2 (S.D. Cal. Aug. 5, 2016); *Townsend v. Imperial Cty.*, No. 12cv2739-WQH-PCL, 2014 WL 2090689, at *2 (S.D. Cal. May 19, 2014); *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA (LB), 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012).

may be deposed if the party seeking the deposition establishes:

> (1) no other means exist to obtain the information than to depose opposing counsel, []; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Id*. at 1327 (internal citation omitted). Generally, the burden of persuasion is on the party moving to quash the subpoena. *Luck v. Univ. of San Diego*, No. 13cv3088-JLS-BGS, 2014 WL 7111950, at *2 (S.D. Cal. Oct. 3, 2014). *Shelton*, however, shifts the burden to the party seeking the deposition. *Erhart*, 2017 WL 840648, at *3–*4 (citing *Shelton*, 805 F.2d at 1327). Accordingly, Defendants must demonstrate that Third Parties' deposition testimony is justified under *Shelton*.

## III. DISCUSSION

Courts have declined to apply *Shelton* when the proposed deponent is not trial or litigation counsel in the underlying case. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730–31 (8th Cir. 2002) ("the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case"); *see, e.g.*, *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 379 (D.D.C. 2011); *United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002). Here, Mr. Insogna currently serves as litigation counsel for Plaintiff in the underlying case. ECF No. 1-2 at 5. However, though Dr. Gay continues to represent Plaintiff in patent prosecution matters, he is not Plaintiff's counsel in the underlying case. *Id*. at 5, 7.

In their oral argument, Defendants argued that the *Shelton* test should not apply to Mr. Insogna because, though he is litigation counsel for Plaintiff in the underlying case, he has not been actively involved, citing his absence during court proceedings and a lack of email correspondence. Defendants cited three out-of-district cases in support of their argument; however, these are not persuasive to this Court. *See WMH Tool Group, Inc. v. Woodstock Int'l, Inc*, No. 07cv3885, 2009 WL 89935, at *6 (N.D. Ill. Jan. 14, 2009) (a trademark infringement case from a district court in the Seventh Circuit that relies on

precedent in its district in declining to adopt *Shelton*); *Genal Strap, Inc. v. Dar*, No. cv2004-1691-SJ-MDG, 2006 WL 525794, at * 4 (E.D.N.Y. Mar. 3, 2006) (a case in a district court in the Second Circuit, where the plaintiff invoked an inequitable conduct defense to a patent infringement counterclaim, that does not address the applicability of *Shelton*); *Alcon Labs v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 343 (S.D.N.Y 2002) (a patent infringement case where the defendant invoked the inequitable conduct defense, from a district court in the Second Circuit, which expressly declined to address whether *Shelton* was the correct standard, and in fact used the *Shelton* standard in its analysis). Further, Mr. Insogna and other members of the same law firm are trial counsel for Plaintiff in the underlying case. The Court finds instructive a case that applied the *Shelton* factors to an attorney who was not trial counsel, but who belonged to the same law firm as trial counsel, noting the burden on litigation as well as the concern that his law partners may have to discontinue representation should he be called as a witness. *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987).

Therefore, this Court will apply the *Shelton* factors to Mr. Ignogna's deposition, and the traditional Rule 45 test to Dr. Gay's deposition.

### A. Mr. Insogna

Defendants seek Mr. Insogna's deposition testimony as to the submissions made to the Patent Office during prosecution, including the facts Defendants claim are relevant to Plaintiff's infringement theory under the doctrine of equivalents. ECF No. 7 at 5. Specifically, they seek his testimony regarding the meaning of certain arguments and amendments made during prosecution, and the facts underlying those arguments and amendments. *Id*. Defendants also seek Mr. Insogna's testimony regarding the underlying facts relating to Plaintiff's validity arguments that the patents-in-suit exhibit unexpected results. *Id*. Specifically, Defendants seek Mr. Insogna's testimony regarding how Mr. Tutino's declarations were prepared and where the data in his declaration came from. *Id*. at 10. To compel Mr. Insogna's deposition, Defendant must show: (1) there are no other means to obtain the information; (2) the information is relevant and non-privileged; and,

(3) the information is crucial to the preparation of the case. *See Shelton*, 805 F.2d at 1327.

## 1. Other Means to Obtain the Information

First, Defendants must show the information they seek from Mr. Insogna cannot be obtained through other means. *Shelton*, 805 F.2d at 1327.

Defendants assert that the '427 and '467 patents are invalid as obvious over the prior art, including prior art formulations of pomalidomide. ECF No. 7 at 10. In response to Defendants' invalidity argument, Plaintiff has asserted that the formulations claimed by the '427 and '467 patents "unexpectedly yielded a stable formation." *Id*. Defendants argue that the basis for these unexpected results is described in two declarations by Anthony Tutino, the inventor, which set out Plaintiff's formulation development efforts. *Id*. Thus, Defendants seek information as to how Mr. Tutino's declarations were prepared and the source of the data in his declaration. *Id*.

Defendants contend that Mr. Tutino was not able to answer their questions on these subjects fully during his deposition, citing numerous "I don't know" responses. *Id*. at 11. Defendants also contend that they tried to get the information via another avenue, Plaintiff's Rule 30(b)(6) witness, but that Plaintiff responded that the proposed deposition topics regarding Mr. Tutino's declarations "seek[] information not in [Plaintiff]'s possession, custody, or control."[5] ECF No. 7 at 10. Therefore, Defendants argue that deposing Mr. Insogna (and Dr. Gay) is the only means to glean information about the preparation of the declarations and their factual underpinnings. *Id*.

The information Defendants seek from Mr. Insogna can be obtained through other means, including discovery methods that would be more efficient than third-party depositions regarding events that happened many years ago. Defendants acknowledged at oral argument that they sought this information through interrogatories and requests for

---

[5] Plaintiffs also objected to that request with a plethora of other boilerplate objections, such as attorney-client privilege, work product, immunity, relevance, undue burden, vagueness, improper expert testimony, and overbreadth. ECF No. 10-9 at 7.

3:19-cv-1589-LAB-AHG

productions to Plaintiff, but do present evidence that they were unable to obtain necessary information from these methods. There is a Special Master appointed in the underlying case, and it does not appear that Defendants made an effort to compel further responses or documents using the Special Master in the underlying litigation. Moreover, obtaining information from many years ago through the testimony of a third-party witness does not appear to be an efficient method to achieve Defendants' stated goals.

Therefore, the Court finds that Defendants have not met their burden of showing that the information they seek from Mr. Insogna cannot be obtained through other means.

### 2. Status of the Information as to Relevance and Privilege

Second, Defendants must show the information they seek from Mr. Insogna is both relevant and non-privileged. *Shelton*, 805 F.2d at 1327.

#### i. Relevance

Courts have broad discretion to determine relevance for discovery purposes. *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *10–*11 (S.D. Cal. June 22, 2017). When analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563–64, 564 n.1 (D. Ariz. 2016) (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Id*. Thus, courts often link the elements of a cause of action with the discovery sought.

In the underlying case, Defendants contest Plaintiff's doctrine of equivalents infringement theory, as well as the validity of its formulation patents.

### a. Defendants have not Demonstrated the Relevance of Mr. Insogna's testimony to Defendants' Prosecution History Estoppel Defense or Prior Art Estoppel Defense to Plaintiff's Doctrine of Equivalents Infringement Theory

The doctrine of equivalents is sometimes applied in patent cases "to enable the claims of a patent to cover products not within the literal scope of the claim if the product only differs insubstantially from the claim language." *Biovail Corp. Int'l v. Andrx Pharmaceuticals, Inc.*, 158 F. Supp. 2d 1318, 1329 (S.D. Fla. 2000) (citing *Davis Chem. Co. v. Warner Jenkenson Co.*, 62 F.3d 1512 (Fed. Cir. 1996)). One way to show an insubstantial difference is that "two [drugs] do the same work in substantially the same way, and accomplish substantially the same result." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997). "If equivalence appears, infringement will be found unless (1) arguments or amendments made by applicant during prosecution (prosecution history estoppel) estop the patentee from asserting a range of equivalence broad enough to encompass the accused product or process; or (2) the equivalent device is within the public domain, i.e., found in the prior art[.]" *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984) (citing *Carman Indus. v. Wahl*, 724 F.2d 932, 942 (Fed. Cir. 1983)).

First, actions taken by a patentee during the prosecution history act as legal limits on the application of the doctrine of equivalents. "'The doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner.'" *Am. Calcar, Inc. v. Am. Honda Motor Co.*, No. 06cv2433-DMS-CAB, 2008 WL 8990989, at *10 (S.D. Cal. Apr. 4, 2008) (quoting *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d at 1374, 1382 (Fed. Cir. 2005)); *see also Voda v. Cordis Corp.*, 536 F. 3d 1311, 1324–25 (Fed. Cir. 2008) (explaining that

prosecution history estoppel operates by "barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution."); *Desper Prods. Inc. v. QSounds Labs. Inc.*, 157 F.3d 1325, 1338 (Fed. Cir. 1998) (explaining that unequivocal assertions or arguments made during the prosecution of a patent create an estoppel which bars application of the doctrine of equivalents). Thus, prosecution history estoppel works to "exclude[e] the range of equivalents subject matter surrendered during prosecution of the application for patent. This estoppel may arise from matter surrendered as a result of amendments to overcome patentability rejections, or as a result of argument to secure allowance of a claim." *Biovail*, 158 F. Supp. 2d at 1329 (citing *Sextant Avionique S.A. v. Analog Devides, Inc.*, 172 F.3d 817, 826 (Fed. Cir. 1990)). For estoppel to apply, "such assertions in favor of patentability must evince a clear and unmistakable surrender of subject matter." *Pharmacia & Upjohn Company v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999) (internal quotation omitted).

Second, the doctrine of equivalents is limited by prior art estoppel, which mandates "that the asserted range of equivalents [] not encompass the prior art at the very point at which the claims distinguish from that art[,] . . . which prevents the doctrine of equivalents from expanding the scope of claims to protect subject matter in, or obvious in light of, the prior art." *Biovail*, 158 F. Supp. 2d at 1329 (citing *Athletic Alternatives, Inc. v. Prince Mfg. Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996)).

Here, Defendants have failed to demonstrate that Mr. Insogna's testimony as to the "meaning of certain arguments and amendments made during prosecution," (*see* ECF No. 7 at 7), is relevant to Defendants' prosecution estoppel defense or prior art estoppel defense to Plaintiff's doctrine of equivalents infringement theory. As Defendants further explained during oral argument, they seek Mr. Insogna's reasons for the amendments and the scope of his disclaimers. The prosecution history of each of the disputed patents is publicly-available in its entirety. The same is true for the '791 publication identified in Defendants' Opposition. "The prosecution histories speak for themselves, and the relevant inquiry in

terms of prior art and claim construction is how one of ordinary skill in the art[6] would interpret and understand those prosecution histories, not what [the party]'s litigation counsel thinks about them." *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01Civ3578(RWS), 2004 WL 1627170, at *5 (S.D.N.Y. July 23, 2004) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996)). Defendants have not adequately demonstrated how Mr. Insogna's testimony is necessary or relevant beyond the prosecution history.

### b. Defendants have Failed to Demonstrate that Mr. Insogna's testimony is Relevant to Defendants' Validity Arguments

"An alleged infringer may assert the invalidity of the patent--that is, he may attempt to prove that the patent never should have issued in the first place. [] A defendant may argue, for instance, that the claimed invention was obvious at the time and thus that one of the conditions of patentability was lacking." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011) (internal citation omitted). The "same factual questions underlying the PTO's

---

[6] Of note, Defendants have cited a case that explains that a prosecuting attorney's testimony <u>could</u> be relevant as <u>expert</u> testimony as to what a "person with skills in the art" would understand, if a meaning of a claim term is not immediately apparent. *Bayer Healthcare, LLC v. Zoetis Inc.*, No. 12-C-630, 2016 WL 4179087, at *10 (N.D. Ill. 2016) (noting that "dictionaries, treatises, expert testimony, and inventor testimony" could be helpful, explaining that "given the overarching interpretive principle—what the claim term means to an ordinary-skilled artisan—it should come as no surprise that explanations of how an expert would interpret a claim are sometimes worth considering," and also warning courts to be "wary of evidence that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.") (internal quotations omitted); *see also Biovail*, 158 F. Supp. 2d at 1323 (a second case that Defendants cited, which noted that "the Court principally looks to the claims made in the patent, the specifications, and the prosecution history. Only if these are ambiguous, does the Court look to extrinsic evidence, such as expert affidavits or declarations.") (citing *Vitronics*, 90 F.3d at 1582). However, in response to Third Parties' contention that Defendants were indeed seeking such expert opinion, (*see* ECF No. 1 at 10–11), Defendants argued that they are <u>not</u> seeking expert testimony from Mr. Insogna or Dr. Gay and are instead seeking factual percipient testimony. ECF No. 7 at 18–19.

original examination of a patent application will also bear on an invalidity defense in an infringement action." *Id*.

Obviousness is a legal question based on underlying factual determinations. *Eisai Co. Ltd. v. Dr. Reddy's Lab., Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008). "The factual determinations underpinning the legal conclusion of obviousness include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors." *Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 970 (S.D. Cal. 2012) (quoting *Eisai*, 533 F.3d at 1356). Secondary factors include "commercial success, long felt but unsolved needs, failure of others, etc." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

Here, Defendants have failed to show how Mr. Insogna's testimony "on the scope of the D'Mato prior art," (*see* ECF No. 7 at 11), is relevant to Defendants' assertion that Plaintiff's patent is invalid as obvious over the prior art. A person of ordinary skill interprets the prior art "using common sense and appropriate perspective." *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) (citing *KSR Int'l*, 550 U.S. at 421). An attorney's opinion or information on the scope would be irrelevant. Prosecution history of the patents is publicly-available in its entirety, Mr. Insogna's prosecution of the D'Amato prior art speaks for itself. Thus, Defendants have failed to show how Mr. Insogna's testimony on this subject would be relevant.

### ii. Privilege

The attorney-client privilege protects confidential communications between a client and an attorney from disclosure

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). "When determining whether a

document seeks legal advice, courts have examined the nature, content, and context in which the document was prepared." *LightGuard Systems, Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 593 (D. Nev. 2012); *see also Citizens Dev. Corp. v. Cty. of San Diego*, No. 12cv334-GPC-KSC, 2019 WL 172469, at *9 (S.D. Cal. Jan. 11, 2019). Also, whether the attorney-client privilege applies should be determined on a case-by-case basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 386 (1981).

While the attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice[,]" the work product privilege "'protects the attorney's thought processes and legal recommendations.'" *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (quoting *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985)). Specifically, the work-product privilege protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). The phrase "in anticipation of litigation" has both temporal and motivational components. *Equal Rights Center v. Post Properties, Inc.*, 247 F.R.D. 208, 208 (D.D.C. 2008). First, at the time the document was prepared, the attorney must have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable. *Id.* Second, the party claiming the privilege must demonstrate that in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. *Id.*; *see also Citizens Dev. Corp*, 2019 WL 172469, at *9. Additionally, there are two kinds of work product: ordinary work product and opinion work product.

> Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. [] In contrast,

3:19-cv-1589-LAB-AHG

> opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

*O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003) (quoting *Baker v. GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000)).

Here, Defendants seek Mr. Insogna's testimony regarding the "meaning of certain arguments and amendments made during prosecution." ECF No. 7 at 6. These mental impressions are clearly opinion work product. "[F]acts are discoverable if relevant. The document prepared by the lawyer stating the facts is not discoverable absent a showing required by Federal Rule of Civil Procedure 26(b)(3). Mental impressions of the lawyer regarding the facts enjoy nearly absolute immunity." *Pastrana v. Local 9509, Communs. Workers of Am.*, No. 6cv1779-W-AJB, 2007 WL 2900477, at *4 (S.D. Cal. Sept. 28, 2007) (citing *In Re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)). Likewise in this case, the facts (i.e., the prosecution history) are publicly available; however, Mr. Insogna's mental impressions about those facts are privileged.

During oral argument, Defendants contended that the attorneys' actions during the prosecution process were not "in anticipation of litigation," as the work product doctrine requires. Defendants did not address Third Parties' response that, if not work product, his testimony still would be privileged. The Court recognizes that some courts have found that the work product doctrine does not blanketly apply to patent prosecution work "because patent prosecution is not an adversarial, litigation-type proceeding, but a wholly ex parte proceeding before the PTO." *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15cv3424-JCS, 2016 WL 7475820, at *10 (N.D. Cal. Dec. 29, 2016). However, after the Supreme Court noted that the preparation and prosecution of patent applications constitutes the practice of law, courts have since "looked to the *Sperry* case as a basis for the theory that patent prosecution is subject to the attorney-client privilege." *Sterne, Kessler, Goldstein, & Fox PLLC v. Edwards Lifesciences Corp.*, No. 13-48-ABJ/JMF, 2013 U.S. Dist. LEXIS 202612, *9 (D.D.C. Apr. 16, 2013) (citing *Sperry v. Florida*, 373 U.S. 379,

383 (1963)). Further, even if long in the past, "[w]here materials prepared during patent prosecution were created with an eye towards litigation, [] they can fall within the scope of the work product doctrine." *Cave Consulting Grp.*, 2016 WL 7475820, at *10 (noting that the "deluge of infringement litigation that commenced" showed that the application was conducted with an eye towards litigation) (internal quotation omitted); *cf. In re Method of Processing Ethanol Byproducts & Related Subsystems '858 Patent Litig*, No. 10ml2181-LJM-DML, 2014 WL 2938183, at *9 (S.D. Ind. June 20, 2014) (noting that other courts "have implicitly assumed that requests to discover the mental impressions of patent prosecution counsel [] by deposition of the patent lawyer seek work product," but permitting such discovery because the need for the information, in an inequitable conduct case, was crucial).

Here, Defendants seek information as to how the inventor's declarations were prepared, the source of data in his declaration, Mr. Insogna's reasons for the amendments and the scope of his disclaimers, and the meaning of certain arguments and amendments made during prosecution. ECF No. 7 at 6, 10–11. During oral argument, Defendants stressed that they seek only factual underpinnings; but "even the most technical communications between inventor and attorney may be privileged if they are 'prepared to provide the patent attorney with the information necessary to assess the invention's patentability, prepare and file a patent application, … and prosecute the patent application through the Patent Office.'" *In Re Gabapentin Patent Litig.*, 214 F.R.D. 178, 182 (D.N.J. 2003) (quoting *Knogo Corp v. United States*, No. 194-79, 1980 U.S. Ct. Cl. LEXIS 1262, at *10 (1980)) (ellipsis in original); *see In Re Spalding Sports Worldwide*, 203 F.3d 800, 806 (Fed. Cir. 2000) (holding that invention record was privileged in its entirety because it "was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application"); *see also Sterne Kessler*, 276 F.R.D. 276, 384–85 ("Simply claiming that an opposing party's former counsel has 'non-privileged, factual information' without stating precisely what information is sought or the benefit of that information is insufficient to overcome the potential risks that the

Federal Rules were intended to protect against"). Here, the Court finds that the evidence suggests that the testimony sought from Mr. Insogna is privileged.

### 3. Importance of the Information to Preparation of the Case

Third, Defendants must establish that Mr. Insogna's deposition testimony is crucial to the preparation of their case. *Shelton*, 805 F.2d at 1327. The Court's finding that Defendants have failed to demonstrate that his testimony is relevant serves to confirm that the testimony is also not crucial to preparation of the case.

### 4. Conclusion regarding Mr. Insogna

The Court finds that Defendants have not established the three *Shelton* factors with regard to Mr. Insogna's testimony. Thus, the Court **GRANTS** the motion to quash the subpoena as to Mr. Insogna.

### B. Dr. Gay

Defendants seek Dr. Gay's deposition testimony as to the submissions made to the Patent Office during prosecution, including the facts Defendants claim are relevant to Plaintiff's infringement theory under the doctrine of equivalents. ECF No. 7 at 5. Specifically, they seek his testimony regarding the meaning of certain arguments and amendments made during prosecution, and the facts underlying those arguments and amendments. *Id*.

Though neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit the taking of attorney depositions, the practice is nonetheless discouraged. *Stevens*, 2015 WL 8492501, at *2. Since the Court has deemed that the *Shelton* test does not apply to Dr. Gay, the Court will examine whether the deposition subpoena of Dr. Gay (1) "requires disclosure of privileged or other protected matter" or (2) "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv). The Court will address these in turn.

### 1. Privilege

As discussed at length above regarding Mr. Insogna's testimony, the "meaning of certain arguments and amendments [Dr. Gay] made during prosecution," (*see* ECF No. 7

at 6), are privileged mental impressions. *See, e.g.*, *In Re Spalding Sports Worldwide*, 203 F.3d at 806; *Pastrana*, 2007 WL 2900477, at *4; *In re Gabapentin Patent Litig.*, 214 F.R.D. at 182; *O'Connor*, 216 F.R.D. at 642.

### 2. Undue Burden

Even if the Court found that Dr. Gay's testimony was not privileged, his subpoena should still be quashed because it poses an undue burden. In determining whether a subpoena poses an undue burden on Dr. Gay, this Court will weigh (1) the burden imposed on the party subject to the subpoena, (2) the relevance of the information sought to the claims or defenses at issue, (3) the breadth of the discovery request, and (4) the Defendants' need for the information. *See Malibu Media*, 2016 WL 7098807, at *1; *Moon*, 232 F.R.D. at 637.

As with Mr. Insogna's testimony, Defendant have failed to explain how Dr. Gay's testimony is relevant. For example, the prosecution history of each of the disputed patents is publicly-available in its entirety. The same is true for the '791 publication identified in Defendants' Opposition. "The prosecution histories speak for themselves, and the relevant inquiry in terms of prior art and claim construction is how one of ordinary skill in the art would interpret and understand those prosecution histories, not what [the party]'s litigation counsel thinks about them." *ResQNet.com*, 2004 WL 1627170, at *5.

Defendants have also not established enough need to outweigh the burden on Dr. Gay.[7] Deposing Dr. Gay will undoubtedly increase "the already burdensome time and costs of litigation" by creating "additional pretrial delays to resolve work-product and attorney-client objections." *Shelton*, 805 F.2d at 1327; *see, e.g.*, *Sterne Kessler*, 276 F.R.D. at 384–85 ("counsel depositions carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up

---

[7] The Court also finds that, had it analyzed Mr. Insogna's subpoena under the same framework, the subpoena would impose an undue burden on Mr. Insogna for the same reasons.

imposing additional pretrial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections"); *Marco Island Partners*, 117 F.R.D. at 420 (noting the burden of delay and cost of deposing opposing counsel, as well as the potential of being forced to discontinue representation due to conflict of interest if the attorney was called as a witness). Defendants do not address these concerns.

When attorney depositions are sought, courts should also consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Sterne Kessler*, 276 F.R.D. at 384–85 (internal quotation omitted). For example:

> Deposing a party's former counsel on the same matter at issue in the pending litigation should not be done lightly. Simply claiming that an opposing party's former counsel has 'non-privileged, factual information' without specifying precisely what information is sought or the benefit of that information is insufficient to overcome the potential risks that the Federal Rules were intended to protect against.

*Id*. Further, "[a]llowing depositions of opposing counsel, even if these depositions were limited to relevant and non-privileged information, may disrupt the effective operation of the adversarial system[.]" *Id*. at 380–81.

The Court's second concern is heightened given the litigation history of the underlying case: "deposition[s] [of opposing counsel] present a unique opportunity for harassment." *Marco Island Partners*, 117 F.R.D. at 420 (stating that a deposition of an attorney who was not litigation counsel in the instant case, but whose firm represented the party, would "disrupt[] the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness"); *see also Sterne Kessler*, 276 F.R.D. at 381–82 (stating the court's concern that "depositions [of opposing counsel] may lead to the disqualification of counsel who may be called as witnesses"). Here, Defendants have not overcome the burdens weighing against deposing Dr. Gay.

### 3. Conclusion regarding Dr. Gay

The Court finds that Dr. Gay's testimony is privileged and, in the alternative, that

testifying would impose an undue burden. Thus, the Court **GRANTS** the motion to quash the subpoena as to Dr. Gay.

### C. Additional Considerations

The Federal Circuit has noted that 80% of patent infringement cases include allegations of inequitable conduct. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. The accused infringer must prove both elements— intent and materiality—by clear and convincing evidence." *Id.* at 1287. Understandably, in cases where inequitable conduct is alleged, courts are more willing to permit depositions of opposing counsel, since their intent and mental state during the patent prosecution are directly at issue. *See V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304(FLW), 2008 WL 3887621, at *3 (D.N.J. Aug. 20, 2008) (permitting deposition of patent prosecution counsel because "mental impressions of the prosecuting patent attorney are not only relevant, but possibly crucial, to an inequitable conduct defense in subsequent litigation over that patent").

Here, however, Defendants do not allege an inequitable conduct defense. Yet, the cases Defendants cite for the proposition that courts "routinely" depose opposing counsel overwhelmingly include those where an inequitable conduct defense is at issue. *See, e.g.*, ECF No. 7 at 7, 17 (citing *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, an inequitable conduct case, for the proposition that "[d]epositions of an opposing party's patent prosecution counsel are routine in patent litigation"); ECF No. 7 at 7 (citing *Vita-Mix Corp. v. Basic Holdings, Inc.*, an inequitable conduct case, for the proposition that "depositions of attorneys in patent infringement and invalidity suits are not unusual"); ECF No. 7 at 9 (citing *Genal Strap, Inc. v. Dar*, an inequitable conduct case, for the proposition that "information about such patent prosecution actions, as well as the underlying facts, are discoverable and appropriately sought by deposing patent prosecution counsel"); ECF No. 7 at 13 (citing *LG Philips LCD Co. v. Tatung Co.*, an inequitable conduct case, for the

proposition that Defendants should be permitted to resolve inconsistent statements or discrepancies by deposing patent prosecution counsel); *cf.* ECF No. 7 at 16 (citing *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, a case involving allegations that the plaintiff perpetrated a fraud on the PTO, for the proposition that "factual basis for representations in a declaration are not privileged and must be disclosed"[8]).

At oral argument, Defendant responded by listing five out-of-district cases cited in their brief where courts purportedly ordered the depositions of prosecution attorneys, where there was no inequitable conduct alleged, because there were relevant factual issues. After reviewing those cases, the Court is not persuaded. *See Oak Indus. v. Zenith Elecs.*, 687 F. Supp. 369, 374–75 (N.D. Ill. 1988) (a district court case from the Seventh Circuit, which did not involve claims of inequitable conduct, but also did not involve the doctrine of equivalents, prosecuting history estoppel, or validity defenses[9]); *Biovail*, 158 F. Supp. 2d at 1323 (a district court case from the Eleventh Circuit, which did not involve claims of inequitable conduct, and also which did not involve disputes regarding a prosecuting attorney's depositions or testimony[10]); *LG Philips LCD Co. v. Tatung Co.*, 04-343-JJF,

---

[8] However, there, the court applied *Shelton* and granted the motion to quash the subpoena because, though the representations were "relevant [to the fraud claim] and not privileged," the court held that "[t]his does not mean, however, that the information must come directly from [the attorney]" and instructed the defendants to seek said information through additional written discovery requests. *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 464–65 (N.D. Ill. June 6, 2008).

[9] There, the court, expressly declining to create a general rule, held that the prosecuting attorney could be questioned about the original patent application because there was no evidence suggesting that the particular patent application was likely to result in litigation, but did not permit questioning regarding his work on the patent reexamination. *Oak Indus.*, 687 F. Supp. at 374–75.

[10] There, the court merely listed in one sentence of its Findings of Fact that the prosecuting attorney had testified in his deposition that he did not remember why he made a certain statement to the PTO. *Biovail*, 158 F. Supp. 2d at 1323. However, later in the court's Conclusions of Law, it clarified that "the Court principally looks to the claims made in the patent, the specifications, and the prosecution history. [] Only if these are ambiguous, does

3:19-cv-1589-LAB-AHG

2007 WL 2908177, at *2 (D. Del. Oct. 1, 2007) (a district court case from the Third Circuit, which involved claims of inequitable conduct, that compelled patent prosecution counsel to testify, but limited her testimony to statements she made about prior art); *Big Baboon Corp. v. Dell, Inc.*, No. CV09-1198-SVW(SSx), 2010 WL 11459352, at *1, *8 (C.D. Cal. July 22, 2010) (a district court case from the Ninth Circuit, which did not involve claims of inequitable conduct, and did not rule on the ability to take depositions of patent prosecution counsel, but rather ruled on privilege objections made during those depositions[11]); *Bayer Healthcare*, 2016 WL 4179087, at *10 (a district court case from the Seventh Circuit, which did not involve claims of inequitable conduct, and also which did not involve disputes regarding a prosecuting attorney's depositions or testimony[12]).

### D. Summary

For the reasons set forth above, the Court **GRANTS** Third Parties' motion to quash the subpoenas of both Mr. Insogna and Dr. Gay (ECF No. 1).

/ /

/ /

/ /

/ /

---

the Court look to extrinsic evidence, such as expert affidavits or declarations." *Id.* at 1329 (internal citation omitted).

[11] There, the court permitted questioning of third-party patent prosecution counsel, who were not affiliated with the parties in the underlying case, regarding the meaning of the words used in the patent-in-suit, but permitted them to assert privilege should the "prosecutor's understanding or knowledge of that term [be] the result of confidential communications with his client." *Big Baboon*, 2010 WL 11459352, at *8.

[12] There, in deciding a motion for summary judgment, the court merely considered evidence from depositions of the prosecuting attorney and inventors as relevant *expert* testimony as to what a "person with skills in the art" would understand, but rejected it as unpersuasive because it was could not override the prosecution history and written record of the patent. *Bayer Healthcare*, 2016 WL 4179087, at *10.

3:19-cv-1589-LAB-AHG

## 2. DEFENDANTS' MOTION TO FILE DOCUMENTS UNDER SEAL
### (ECF No. 6)

Before the Court is Defendants' Motion for an Order to File Under Seal Exhibits to Defendants' Opposition to Movants' Motion to Quash Subpoenas. ECF No. 6. Though Defendants propose that their memorandum of points and authorities in support of its opposition to the motion to quash ("Opposition"), declaration of Lauren Schweitzer ("Schweitzer Declaration"), and all 19 exhibits be lodged and sealed (ECF No. 7 at NEF), Defendants contend that only six exhibits attached to their Opposition are designated "highly confidential" pursuant to a protective order in the underlying case and thus should be sealed. ECF No. 6 at 3–4.

Since the public filing of documents would affect Plaintiff, the Court required supplemental briefing from Plaintiff in support of Defendants' motion to seal. ECF No. 8. Plaintiff filed a declaration in support of sealing (1) redacted portions of Defendants' Opposition, (2) the entirety of Exhibit 1 to the Schweitzer Declaration, and (3) redacted portions of Exhibits 7 and 8 to the Schweitzer Declaration. ECF No. 12 at 2. Plaintiff maintains that the redacted portions include "highly confidential information about [Plaintiff]'s products, research and development, and/or highly confidential business information of [Plaintiff], the disclosure of which would cause serious competitive harm to [Plaintiff]." *Id.*

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm. Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178; *see also Mezzadri v. Medical Depot, Inc.*, No. 14-cv-2330,

2015 WL 12564223, at *3 (S.D. Cal. Dec. 18, 2015).

A party requesting that the court seal materials attached to a non-dispositive motion must make a particularized showing of good cause. *Kamakana*, 447 F.3d at 1180. As to the entire Opposition, entire Schweitzer Declaration, and all 19 exhibits, neither Defendant nor Plaintiff have given any reason why the documents require sealing other than that the documents were designated as "highly confidential" under the protective order when they were produced. ECF No. 6 at 3–4. This reason is itself not sufficient to constitute good cause. *See San Diego Comic Convention v. Dan Farr Prods.*, No. 14cv1865-AJB-JMA, 2018 WL 1744536, at *3 (S.D. Cal. Apr. 10, 2018) ("Indeed, some district courts have declined to seal documents when the sole basis for the request is a protective order that covers them"); *Cortina v. Wal-Mart Stores, Inc.*, No. 13cv02054-BAS-DHB, 2016 WL 4556455, at *1 (S.D. Cal. Sept. 1, 2016) ("[P]arty's designation of documents as 'confidential' pursuant to such [protective] order, is not itself sufficient to show good cause"); *Durham v. Halibrand Performance Corp.*, No. 14cv1151-DMS-JLB, 2014 WL 12520130, at *1 (S.D. Cal. Dec. 12, 2014) ("That a document is designated confidential pursuant to a protective order is of little weight when it comes to sealing documents which are filed with the Court"). Thus, the Court **DENIES IN PART** Defendants' motion insofar as it seeks to seal the entire Opposition, entire Declaration, and all 19 exhibits.

The Court addresses motions to seal in its Chambers Rules, which states in relevant part:

> There is a presumptive right of public access to court records based upon common law and the First Amendment. The Court will scrutinize any request to file information under seal, and a request will only be granted if a specific showing is made that justifies sealing. Generic and vague references to "competitive harm" will almost always be insufficient to justify sealing.

Chmb.R. at 2. Further, the Court reminded the parties of its requirements in its order for supplemental briefing. ECF No. 8 at 2 ("Additionally, Plaintiff shall be mindful of the Court's Chambers Rules, which detail that "a request [to file information under seal] will only be granted if …."). Insofar as Plaintiff alleges generic "undue prejudice and

competitive harm," (ECF No. 12-1 at ¶7), the Court is not persuaded to seal such documents.

Plaintiff does include specific reasons why portions of Exhibits 7 and 8 should be sealed: those exhibits include Plaintiff's product development and testing process, which could provide competitors with insights into Plaintiff's business that they would not otherwise have. ECF No. 12-1 at 3. Further, those paragraphs describe unexpected results relating to formulations of Plaintiff's patents, which are responsive to validity contentions. *Id*. at 3. Plaintiff also includes specific reasons why Exhibit 1 and portions of Defendants' Opposition should be sealed: those documents contain Mr. Tutino's deposition testimony, which includes highly confidential information relating to Plaintiff's patent prosecution procedures, product testing and research, and product development. *Id*. at 2. Therefore, the Court **GRANTS IN PART** Defendants' motion, insofar as it seeks to seal Exhibit 1 to the Schweitzer Declaration, the redacted portions of Exhibit 7 to the Schweitzer Declaration, the redacted portions of Exhibit 8 to the Schweitzer Declaration, and the redacted portions of Defendants' Opposition.

Pursuant to the Court's instructions, (ECF No. 8), Defendants have already publicly filed on the docket the necessary redacted version of the papers (ECF Nos. 9, 10) and electronically lodged the unredacted version of the papers under seal (ECF No. 7). Thus, the Clerk's Office is directed to file the lodged documents at ECF No. 7 under seal.

### 3. THIRD PARTIES' MOTION TO FILE DOCUMENTS UNDER SEAL (ECF No. 14)

Before the Court is Third Parties' Motion for an Order to File Under Seal Portions of Movants' Reply and Exhibits in Support of Third Parties' Motion to Quash. ECF No. 14. Specifically, Third Parties request an order permitting them to file the following documents under seal: (1) Page 6, line 7 through page 7, line 4 (including footnote 5) of the Reply in Support of Third Parties Anthony Insogna and David Gay's Motion to Quash ("Reply"); (2) Page 7, lines 11-15 of the Reply; and (3) Exhibits 1 and 2 to the Declaration of Steven

N. Geise ("Geise Declaration"). *Id*. at 2. Third Parties contend that those documents were designated "highly confidential" pursuant to a protective order in the underlying case and thus should be sealed. *Id*. Further, "[t]hose materials include and describe highly confidential information relating to [Plaintiff]'s product research and development, [Plaintiff]'s patent prosecution procedures, and confidential details of third-party agreements. *Id*. at 3. Since the public filing of documents would affect Plaintiff, it filed a declaration in support of Third Parties' motion to seal. ECF No. 14-1. There, Plaintiff explained that Exhibit 1 to the Geise Declaration is comprised of selected excerpts from the deposition transcript of Celgene employee and Celgene Rule 30(b)(6) witness Anthony Tutino; Exhibit 2 to the Geise Declaration is comprised of selected excerpts from the transcript of the October 11, 2019 hearing in the underlying case; and portions of the Reply describe and quote from the deposition transcript of Mr. Tutino and the transcript of the October 11 hearing. ECF No. 14-1 at 2

As with Defendants' motion to seal, Plaintiff's and Third Parties' reliance on the fact that the information was deemed "confidential" pursuant to the protective order, (*see* ECF No. 14-1) is unpersuasive. *See, e.g.*, *Durham*, 2014 WL 12520130, at *1. Additionally, as with Defendants' motion to seal, Plaintiff's and Third Parties' generic references to the potential for "undue prejudice and competitive harm" are likewise unavailing. *See* Chmb.R. at 2.

 Plaintiff also articulated, however, specific reasons why these documents should be sealed. *See Kamakana*, 447 F.3d at 1178 (explaining a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure). Exhibit 2 and portions of the Reply contain information relating to confidential third-party agreements, ECF No. 12-1 at 3. Exhibit 1 and portions of the Reply include information relating to Plaintiff's product research and development, as well as Plaintiff's patent procedures. *Id*. at 2. Public access to these would provide competitors with insights into Plaintiff's business that they would not otherwise have. *Id*. at 2–3.

Good cause appearing, the Court **GRANTS** Third Parties' motion, insofar as it seeks

to seal: (1) Page 6, line 7 through page 7, line 4 (including footnote 5) of the Reply; (2) Page 7, lines 11-15 of the Reply; and (3) Exhibits 1 and 2 to the Geise Declaration.

Third Parties have already publicly filed on the docket the necessary redacted version of the papers (ECF No. 13), and electronically lodged the unredacted version of the papers under seal (ECF No. 15). Thus, the Clerk's Office is directed to file the lodged documents at ECF No. 15 under seal.

## 4. **CONCLUSION**

For the reasons set forth below, the Court orders as follows:

1.  The Court **GRANTS** Third Parties' Motion to Quash Subpoenas (ECF No. 1);

2.  The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to File Documents Under Seal (ECF No. 6). The Clerk's Office shall file the lodged documents at ECF No. 7 under seal; and

3.  The Court **GRANTS** Third Parties' Motion to File Documents Under Seal (ECF No. 14). The Clerk's Office shall file the lodged documents at ECF No. 15 under seal.

**IT IS SO ORDERED.**

Dated: January 3, 2020

_____

Honorable Allison H. Goddard
United States Magistrate Judge

3:19-cv-1589-LAB-AHG